Appeal No. 2015-1631

# United States Court of Appeals
# for the Federal Circuit

TRIVASCULAR, INC.,

*Appellant,*

*v.*

SHAUN L. W. SAMUELS,

*Appellee.*

*Appeal from the United States Patent and Trademark Office, Patent
Trial and Appeal Board in Inter Partes Review No. IPR2013-00493*

## BRIEF OF THE APPELLEE SHAUN L. W. SAMUELS

James D. Petruzzi
The Petruzzi Law Firm
4900 Woodway Drive, Suite 745
Houston, TX 77056
(713) 840-9994
jdpetruzzi@gmail.com

*Counsel for Appellee*

August 20, 2015

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Trivascular, Inc. v Shaun L.W. Samuels
No. 2015-1631

**CERTIFICATE OF INTEREST**

Counsel for the appellee, Shaun L.W. Samuels, certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

    Shaun L.W. Samuels

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    n/a

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    n/a

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    James D. Petruzzi at The Petruzzi Law Firm, 4900 Woodway, Suite 745, Houston, Texas 77056, jdpetruzzi@gmail.com

    Everett Diederiks and Nicholas S. Whitelaw at Diederiks & Whitelaw, PLC, 13885 Hedgewood Drive, Suite 317, Woodridge, VA 22193-7932, ediederiks@dwpatentlaw.com

    Martin J. Siegel at The Law Offices of Martin J. Siegel, 815 Walker St., #1600, Houston, Texas 77098, martin@siegelfirm.com

August 20, 2015                       /s/ James D. Petruzzi
                                              Counsel for Appellee

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ..................................................................... i

TABLE OF AUTHORITIES ......................................................................... v

STATEMENT OF RELATED CASES ......................................................... 1

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE ..................................................................... 2

I. Introduction ..................................................................................... 3

II. Statement of Facts .......................................................................... 3

A. Background ............................................................................... 3

B. The Claims ................................................................................ 5

C. The Prior Art ............................................................................. 9

Samuels '851 ............................................................................. 9

Todd '745 ................................................................................. 10

Lazarus '088 ............................................................................ 11

Rogers '024 ............................................................................. 11

Holman '537 ............................................................................ 11

The Petition ............................................................................. 12

The Decision to Institute ......................................................... 13

Trial Proceedings .................................................................... 15

The Final Written Decision ..................................................... 16

Request for Rehearing ............................................................. 18

The Decision on the Request for Rehearing ................................ 18

SUMMARY OF ARGUMENT ................................................. 19

ARGUMENT ..................................................................... 21

I.   Standard of Review ......................................................... 21

II.  The Board correctly required that the "circumferential ridges"
     be broadly construed as a "raised strip" disposed
     circumferentially about the surface of the inflatable cuff. ................. 22

     A.  The issued claims are not affected by Estoppel. .......................... 24

     B.  The Board did not err in dismissing TriVascular's arguments
         regarding the prosecution history ................................................. 25

     C.  The Board Correctly Construed the claims to require "raised
         strips" ................................................................................... 26

         First Theory ................................................................ 27

         Second theory ................................................................ 28

III. TriVascular's statement that the Board erred in determining
     that the skilled artisan would not have combined the teachings
     of Samuels '851 and Todd is incorrect ................................................. 31

     A.  The Board did combine Samuels '851 and Todd '745 and
         correctly decided that TriVascular did not show that the
         combination of Samuels '851 and Todd '745 satisfies the
         requirement of independent claims 1, 14, and 23 for
         "inflatable protrusion(s) including at least one
         circumferential ridge disposed about the inflatable cuff". ............. 32

     B.  The Board did not find that the references teach away and
         the Board is free to reach a different conclusion at Trial from
         the one it reached when instituting the Trial. ................................. 34

     C.  TriVascular confuses the concept of bodily incorporation
         and ignored the state of the art and the Board correctly
         focused its analysis. ........................................................ 36

CONCLUSION............................................................................................ 40

CERTIFICATE OF SERVICE .................................................................... 41

CERTIFICATE OF COMPLIANCE............................................................ 43

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) ...................................................................... 21

*Graham v. John Deere Co.,*
   383 U.S. 1 (1966) ......................................................................... 21

*In re Dembiczak,*
   175 F.3d 994 (Fed. Cir.1999) .................................................... 21

*In re Gartside,*
   203 F.3d 1305 (Fed. Cir. 2000) ................................................. 21

*In re Jolley,*
   308 F.3d 1317 (Fed. Cir. 2002) .......................................... 21, 22

*In re NTP, Inc.,*
   654 F.3d 1279 (Fed. Cir. 2011) ................................................. 22

*In re Zletz,*
   893 F.2d 319, 321 (Fed. Cir. 1989) ........................................... 28

*Microsoft Corp. v. Proxyconn,*
   (Fed. Cir. June 16, 2015) .................................................... 22, 24

*Samuels v. TriVascular Corporation,*
   Civ. Action No. 3:13-cv-02261 (N.D. Cal.) ............................... 1

*St. Jude Medical, Cardiology Division, Inc. v. Volcano Corporation,*
   749 F.3d 1373 (Fed. Cir. 2014) ................................................. 38

*In re Suitco Surface, Inc.,*
   603 F.3d 1255 (Fed. Cir. 2010) ................................................. 22

*Tempo Lighting Inc. v. Tivoli LLC,*
  742 F.3d 973 (Fed. Cir. 2014) .................................................................. 22

**Statutes**

35 U.S.C. § 319............................................................................................. 37

37 C.F.R. § 42.108(c) ................................................................................... 38

**Rules**

Rule 47.5 (a)..................................................................................................... 1

Rule 47.5 (b) .................................................................................................... 1

**Other Authorities**

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986)......... 29

## STATEMENT OF RELATED CASES

The Brief of Appellant, TriVascular, Inc. ("TriVascular"), does not include a complete statement of related cases and therefore Appellee, Shaun L. W. Samuels ("Samuels") adds the following: Pursuant to Rule 47.5 (a) Samuels notes that no other appeal from the lower proceeding was before this or any other appellate court; and pursuant to Rule 47.5 (b) Samuels notes that Samuels sued TriVascular for infringement of U.S. Patent 6,007,575 (Samuels '575) and sued three other individuals, for inducing infringement of the '575 patent, in *Samuels v. TriVascular Corporation*, Civ. Action No. 3:13-cv-02261 (N.D. Cal.).

## STATEMENT OF JURISDICTION

TriVascular's statements regarding Jurisdiction are too broad. (See TriVasclar's Brief (Br), Br.1) While Samuels does agree that this Court has jurisdiction over this appeal, Samuels respectfully submits that this Court's Jurisdiction is limited to reviewing the Board's decision (See the Appendix (A), A23-A24) that claims 1-2, 6-15 and 18-22 of Samuels '575 (A36) are patentable over U.S. Patent No. 5,423,851 (Samuels '851) (A510) in view of U.S. Patent No. 5,423,745 (Todd '745) (A575) and does not extend to reviewing grounds of patentability not instituted by the Board (A189-A194,

Institution Decision) or not present in the original Petition for *Inter Partes*
Review No. IPR2013-00493 (A51-A116, Petition).

## STATEMENT OF THE ISSUES

1.     Did the Board err in requiring that "circumferential ridges" be
continuous?  No.  The Board correctly required that the "circumferential
ridges" be broadly construed as a "raised strip" disposed circumferentially
about the surface of the inflatable cuff (A5-6 Final Written Decision).

2.     Did the Board err in determining that the skilled artisan would not
have combined the teachings of the Samuels '851 (A510) and Todd '745
(A575) references to meet the claim limitations?  No.  The Board correctly
decided that TriVascular did not show that the combination of Samuels '851
and Todd '745 satisfies the requirement of independent claims 1, 14, and 23
for "inflatable protrusion(s) including at least one circumferential ridge
disposed about the inflatable cuff" (A18 Final Written Decision).

## STATEMENT OF THE CASE

Samuels does not disagree with the Statement of the Case on page 2
of the TriVascular's Brief (Br. 2).  However, an introduction and the
Statement of Facts (Br. 3-24) is incorporated into the Statement of the Case

and also appears to contain several assertions in addition to the facts. Therefore, provided below is a Statement of Facts provided in a more neutral manner, along with a discussion of specific points of disagreement with TriVascular's assertions.

## I. Introduction

TriVascular appealed the Board's Decision, but presents no proper reason for the Appeal. The Board's Final Written Decision (A1-A25 Final Written Decision) is well reasoned, and follows all applicable legal principles, and fully considers all of TriVascular's arguments that were raised during the proceedings. The Board Decision is supported by substantial evidence and therefore should be affirmed and TriVascular's Appeal should be dismissed.

## II. Statement of Facts

### A. Background

As stated in Samuel's Response, (A247-A248 Patent Owner's Response) various medical conditions can lead to deterioration of tubular structures in the human body. A commonly recognized issue is the deterioration of a vascular wall leading to a constriction of the vascular wall (stenosis) and a change in the flow of blood to certain parts of the body.

3

Another common medical issue is the weakening of a vascular wall, causing the wall to enlarge in diameter (aneurysm). Each of these potentially life threatening situations is often addressed by surgically, permanently fixing a stent or stent graft within the tubular body in order to reestablish a desired flow diameter. Most often, a catheter is employed to temporarily cease the flow of blood through the tubular structure of concern and internally locate a stent in a desired position, whereupon the catheter is inflated to cause anchoring structure, such as pins, clips or barbs, provided as part of the stent to engage the vascular wall so as to anchor the stent. The catheter is then deflated and removed to allow the blood flow to resume, while the stent remains and establishes a portion of the blood flow path (A47, Ex. 1001, column 1 line 5 through column 2 line 24).

Obviously, the dimensions of the tubular structures of concern are quite small. During insertion, it is desired to maintain a stent in a collapsed state for maneuverability within the tubular structure and then, upon reaching a desired mounting location, expand the stent.

TriVascular discusses, partially on pages 5-6 of its Appeal Brief (Br. 5-6), many references that were present in the initial *inter partes* petition (A51, A55) but are not part of this Appeal and attempts to characterize Samuels' claims as not sufficiently distinctive from this prior art. (Br. 7).

4

However, rejections based on this additional prior art is not the subject of this appeal and, as the Board correctly held, TriVascular did not show that the combination of Samuels '851 and Todd '745 satisfies the requirement of independent claims 1, 14, and 23 for "inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff" (A18, Final Written Decision).

### B. The Claims

As stated in the Patent Owner's Response (A248-A250, Patent Owner's Response) Samuels '575 (A36-A50) is directed to an apparatus for disposal within a tubular structure of a human body and, more particularly, an inflatable intraluminal stent for attachment to an interior surface of a tubular structure within the human body.  With specific reference to Figure 1 of the patent (A37) a stent 5 includes one or more inflatable and deflatable cuffs 17, each of which is hollow and has a collapsible lumen 15.  Cuff 17 also has an inner surface 19, an inlet 7, an outlet 9 and a friction enhancing outer surface 23, such as discussed in column 3, lines 25-32 (A48).  For locating and frictionally engaging the wall of the tubular structure, outer surface 23 features inflatable protrusions in the form of at least one circumferential ridge 25 disposed about cuff 17, as seen best in Figures 1 and 2 (A37-A38) and described in column 3, lines 33-41 (A48) (also see

ridges 91 of Figure 5c and ridges 99 in Figure 8 (A43) for other

embodiments).  With this arrangement, stent 5 can be transformed from a

deflated state to an inflated state by introducing a fluid into cuff 17,

specifically each of the circumferential ridges 25.  When cuff 17 is in its

fully inflated condition, circumferential ridges 25 engage the interior of the

tubular structure, without penetration, to affix cuff 17 to the tubular structure

and prevent cuff 17 from moving in a longitudinal direction.  If stent 5 needs

to be repositioned following initial placement, it may be deflated,

specifically with the tubular wall engaging circumferential ridges 25 being

themselves deflated which reduces the overall diameter of the stent 5 and

enhances repositioning.

This overall arrangement has not been heretofore known in the art

(Declaration by Samuels, A2111-2113, and Declaration by Clark, A2133-

2136; Ex. 2002 and 2003).  In particular, the inclusion of inflatable

protrusions in the form of circumferential ridges established along an outer

surface of an inflatable and deflatable cuff of a stent for disposition within a

lumen of a tubular structure as claimed was not available in the medical

field.  The enhanced arrangement of the invention is particularly brought out

in the claims of Samuels '575 (A49-50) with each of independent claims 1,

14 and 23 structurally requiring at least:  an inflatable cuff having a friction-

6

enhancing outer surface featuring an inflatable protrusion in the form of at

least one circumferential ridge for engaging an interior of a tubular structure

without penetration, as well as additional structure for inflating the same.

Each of the independent claims of Samuels' '575 specifically requires that

the protrusion(s) be inflatable. The protrusions are unarguably identified by

the circumferential ridges, such as ridges 25 in one embodiment clearly

shown in Figure 2 (A38) reproduced here.



In connection with the interpretation of this limitation, it is important

to note that the U.S. Patent Examiner originally assigned to examine the

patent application conducted a telephone interview with the Applicant's

representative (A721) during which an agreement was reached to add the limitations directed to "inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff" from original dependent claims 3 and 4 into claim 1 to obtain allowance. More specifically, original claim 3 introduced the inflatable protrusions and original claim 4 specified the protrusions as circumferential ridges (A718-A724, Ex. 1012). Therefore, the protrusions, constituted by the circumferential ridges, were appropriately construed to themselves be inflatable and added patentability to claim 1.

TriVascular, when discussing the file history (Br. 9-12) takes great pains to discuss how in the prosecution history Samuels presented an amendment to the claims that required the inflatable protrusions of the cuff to not feature ridged components, such as barbs 18 of the Samuels '851 patent and required that the circumferential ridge to be "continuously" disposed about the inflatable cuff. However, as TriVascular admits, these amendments were never entered and are not part of the current claims (A718-A721). Indeed the Examiner allowed the claims without requiring any such amendments (A722-730). Normally prosecution history estoppel limits the scope of the claims. TriVascular takes the odd position that prosecution history estoppel requires that the Patent Owner's claims be

8

considered broad enough to "encompass circumferential ridges that are discontinuous, and that include a ridged component", such as a barb. Such a broad reading, in TriVascular's view, reads on Samuels '851, the very reference the Examiner initially used to reject claims in the application, (A695-A699). Samuels disagrees. The fact that an amendment was presented and never entered, simply does not give rise to estoppel, nor should it affect the claims in any way, since the arguments and amendments did not result in the Examiner allowing the claims. Furthermore, the Examiner allowed the claims over Samuels '851, the same patent that TriVascular is attempting to use to declare the subject claims unpatentable.

## C. The Prior Art

### Samuels '851

As set forth in the Patent Owner response (A255) it should be recognized that Samuels '851 sets forth a prior arrangement developed by the inventor of the subject Samuels '575 patent. Samuels '851 is directed to a stent and teaches to positively engage the stent with tube walls. Samuels '851 actually focuses on using barbs for this purpose. Note, for example, the discussion in column 1, lines 48-55, column 2, lines 5-6 and 60-64, column 3, lines 51-56, and claim 1, section (d) (A514-515). Indeed, the discussion

in Samuels '851 stresses how important barbs are in order to avoid the

potential for migration of the device to an undesired location.  Therefore,

Samuels '851 was mainly concerned with avoiding any device migration

and, to accomplish this goal, the barbs were crucial.  Certainly, Samuels

'851 has no inflatable ridges.

### Todd '745

Todd '745 discloses a catheter with a gripping means for gripping the

walls of a body passageway.  Initially, it should be noted that, unlike a stent,

the catheter of Todd '745 is only designed to be temporarily placed in a fluid

vessel to hamper fluid flow.  The gripping means is, in one embodiment, a

solid, non-inflatable ridge 52.  A reproduction of Figure 8 of Todd (A582,

TriVascular Ex. 1008,) is provided below left, and a representative cross

sectional view thereof (A2177, Ex 2004) is provided below right.  As



FIG. 8

discussed in the Patent Owner Response (A257-259) the region between the

10

inner and outer surfaces of balloon 26 of Todd is solid (just like in the

embodiment of Figure 4 of Todd A579) and any provided roughened

surfaces or protuberances are also solid.  Therefore, Todd '745 is not

directed to a stent and fails to disclose any circumferential ridge which is

inflatable.

### Lazarus '088

U.S. Patent 5,693,088 (A524, Lazarus '088) was presented in the

Petition to support Grounds 4 and 7 of unpatentability (A75, A77).

However, the Board did not institute trial on Ground 4 and the Appellant did

not Appeal Ground 7.

### Rogers '024

U.S. Patent 5,534,027 (A517, Rogers '024) was presented in the

Petition to support Grounds 2 and 3 of unpatentability (A74-75).  Neither of

these grounds was the basis for instituting *inter partes* review (A191) nor are

they the subject of this Appeal.

### Holman '537

U.S. Patent No. 5,871,537 (A615, Holman '537) was presented in the

Petition to support Ground 8 of unpatentability (A78).  Ground 8 was not the

basis for instituting *inter partes* review (A192) and is not the subject of this Appeal.

### The Petition

The original Petition for *inter partes* review of Samuels '575 presented eight grounds of unpatentability which were as follows (A71-A115):

Ground 1: §102(b) and/or §103(a) based on Samuels '851 versus claims 1-2, 6-15, 18-24;

Ground 2: §102(e) and/or 103(a) based on Rogers '024 versus claims 1-6, 11, 14-17 and 21;

Ground 3: §103(a) based on Samuels '851 and Rogers '024 versus claims 1-24;

Ground 4: §103(a) based on Samuels '851 and Lazarus '088 versus claims 1-2 and 4-24;

Ground 5: §103(a) based on Samuels '851 and U.S. Patent No. 5,665,117 (Rhodes '117) versus claims 1-2, 4-16, and 18-24;

Ground 6: §103(a) based on Samuels '851 and U.S. Patent No. 5,494,029 (Lane '029) or U.S. Patent No. 3,991,767 (Miller '767) or U.S. Patent No. 5,423,745 (Todd '745) or U.S. Patent No. 4,586,505 (Sisson '505) versus claims 1-2, 6-15, and 18-24;

Ground 7: §103(a) based on Lazarus '088 and Miller '767 or Todd '745 or

Sisson '505 versus claims 1, 4-6, 9-11, 13-14, 16-17, and 19-21; and

Ground 8: §103(a) based on Holman '537 and U.S. Patent No. 5,156,620

(Pigott '620) and U.S. Patent No. 5,494,029 (Lane '029) versus claims 1-2,

4-8, 11, 13-17, 21.

### The Decision to Institute

In the Decision to Institute (A168) the Board conducted an initial

claim construction.  More specifically, the Board construed "a

circumferential ridge" stating

> the '575 patent describes a "circumferential ridge" as a ridge,
> i.e., a raised strip, "disposed about [the] circumference" of outer
> surface 23 of inflatable cuff 17. Ex. 1001, 3:32-33, 54; Figs. 1
> and 2. As this description accords with the ordinary and
> customary meaning of the word "ridge" as "a raised strip (as of
> plowed ground)," we interpret a "circumferential ridge disposed
> about the inflatable cuff" to mean a "raised strip disposed
> circumferentially about the outer surface of the inflatable cuff."
> (A176) (footnote removed)

The Board granted the Petition with respect to only the following

grounds of unpatentability (A193):

Ground 6 [Claims 1-2, 6-15, and 18-24] based on Samuels '851 and

Todd '745.  However, while the decision to institute trial does mention

claims 1-2, 6-15, and 18-24, the petition lacks any mention of how Todd

'745 meets any limitations of claims 23 and 24 as shown on pages 56-60 and

13

in claim charts 2 and 3 of the Petition (A81-A115). Regardless, the Board explained that "Petitioner relies on Samuels '851 for all the limitations of claim 1 except the friction-enhancing outer surface, and upon the 'inflatable balloon protuberances' of Todd '745 for this feature" (A181). The Board went on to state "We understand Petitioner to contend that it would have been obvious to a person of ordinary skill in the art to substitute Todd's protuberances (such as outwardly projecting annular rings 52 of Figure 8) for the barbs of Samuels '851." (See A182)

Ground 7 [Claims 1, 4-6, 9-11, 13-14, 16-17, and 19-21] was based on Lazarus '088 and Todd '745 (A193). However, the Decision regarding Ground 7 was not appealed.

The Board denied the Petition with respect to all other Grounds (A193). Specifically, with respect to Ground 1 the Board found

> Petitioner contends that Samuels '851 discloses inflatable cuff 10 having a plurality of reinforced recesses 12 radially arrayed around its outer surface and that, when cuff 10 is inflated fully, recesses 12 pop out and are dome-shaped. *E.g.*, Pet. 27, claim chart, at 1a-2 and 1a-3 (citing to Ex. 1002, 2:40-42, 57-59, 62-63, Fig. 3). Petitioner has not persuaded us that Samuels '851 discloses or suggests "at least one circumferential ridge disposed about the inflatable cuff," as construed above, because the recesses 12 do not form a raised strip. Accordingly, we are not persuaded that Samuels '851 anticipates, or renders obvious, claims 1, 2, 6-15, and 18-24 of the '575 patent. (A189-190)

14

TriVascular did not ask for a rehearing regarding the Board's decision not to proceed on Ground 1.  Samuels did request a rehearing on the Decision to Institute Trial (A207).  In the Rehearing Decision (A222) the Board specifically addressed the Samuels' contention that as properly construed, "**the protrusions … are themselves inflatable**" (emphasis in Board Decision A226).  The Board responded by stating that the Board expressly dealt with the "inflatable protrusions" requirement and thus put TriVascular on notice as to how the Board was interpreting the claims (A226).

## Trial Proceedings

During Trial Samuels successfully proved that the removal of barbs from the arrangement in Samuels '851 would destroy the arrangement's ability to perform its intended goal.  Specifically, the invention in Samuels '851 is predicated on the use of barbs to stop a device from moving or migrating to an undesired location.  Samuels argued that the removal of the barbs would increase the tendency for potential migration of the device to an undesired location (A264-65, Patent Owner's response).

During the overall Trial proceedings, TriVascular chose to pursue two contradictory theories of unpatentability based on Samuels '851 and Todd '745. (Br. 38)  In its "first theory", TriVascular argued in the Petition (A77) and its Reply (A354) that Todd '745 can be used to teach that inflatable

15

protrusions should be added to the arrangement in Samuels '851 and in its "second theory" that Samuels '851 teaches inflatable protrusions and that it would have been obvious to consider replacing just the barbs of Samuels '851 with the protrusions of Todd '745. This second theory was not present in the Petition but became more pronounced in the Petitioner's Reply, A359, and at oral argument, A440-445. As stressed in TriVascular's Brief (Br. 21), TriVascular now argues that Samuels '851 is to be relied upon for disclosing inflatable protrusions. This apparently ignores the basis for instituting *inter partes* review in the Board's Decision to institute trial and Decision on rehearing, wherein, as noted above, TriVascular had already admitted that Samuels '851 lacked the claimed inflatable protrusions and therefore Todd '745 was being relied upon to teach the inflatable protrusions (A181-182).

## The Final Written Decision

After the Trial, the Board issued a Final Written Decision (A1) in which the Board found that claims 1, 2, and 4–24 of U.S. Patent No. 6,007,575 were deemed patentable (A23-24). With regard to the "circumferential ridge", the board did not change its construction but maintained that, correctly interpreted, the "circumferential ridges" were to be broadly construed as a "raised strip" disposed circumferentially about the surface of the inflatable cuff (A5-6). The Board also confirmed, as it had

done in the Decision on Patent Owner's Request for Rehearing, that inflatable ridges were in fact inflatable (A7-8).  With regard to the claims, the Board determined "that TriVascular has not shown that the combination of Samuels '851 and Todd satisfies the requirement of independent claims 1, 14, and 23 for 'inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff.'" (See A10-20) The Board explained that none of the references showed protrusions that were themselves inflatable, as required by the claims.

TriVascular also argues that the Board changed its position from when it instituted trial, first indicating that TriVascular had a likelihood of succeeding and then, after considering all the evidence, found that TriVascular had failed to prove the subject claims unpatentable.  (Br. 24) Samuels respectfully submits that TriVascular is suggesting that all *inter partes* reviews that are instituted, must result in cancelled claims, otherwise the Board is improperly changing its mind.  Samuels submits that TriVascular's reasoning is improper and should not be followed.  In a proper proceeding, the decision to institute simply indicates if the Petitioner is likely to succeed, while the Final Written Decision should be based on the evidence presented at trial, as was done in this proceeding.

**Request for Rehearing**

TriVascular requested a rehearing of the Decision (A482) in which TriVascular argued that the broadest reasonable interpretation of the "circumferential ridge" should include both "continuous" and "discontinuous" circumferential ridges (A488-A492). TriVascular argued that the Board decided "that the prior art Samuels '851 did not disclose a 'circumferential ridge' because the inflatable protuberances of Samuels '851 were not continuous and thus did not form a continuous ridge" (A490). TriVascular also tried to make further arguments based on Rogers '024 and Holman '537 (A499-A502).

**The Decision on the Request for Rehearing**

The Board did not agree with Trivascular in its Decision on the Request for Rehearing. With regard to the "circumferential ridge" limitation the board stated

> TriVascular argues that we decided "that the prior art Samuels '851 did not disclose a 'circumferential ridge' because the inflatable protuberances of Samuels '851 were not continuous and thus did not form a continuous circumferential ridge." *Id.* at 3. TriVascular provides no citation to where we purportedly made that decision. In the Institution Decision, we analyzed the "circumferential ridge" limitation in the context of TriVascular's challenge to claims 1, 2, 6–15, and 18–24 as anticipated or obvious over Samuels '851. Inst. Dec. 22–23. We stated that Samuels '851 does not disclose or suggest the

18

"circumferential ridge" limitation because "recesses 12 do not form a *raised strip*," as required by our claim interpretation. *Id.* at 22 (emphasis added). TriVascular's argument mischaracterizes our analysis. (A31-A32)

With regard to the additional prior art cited by TriVascular, the Board explained that the additional prior art was considered and reminded TriVascular that a Request for Reconsideration was not an opportunity to raise issues for the first time (A34). TriVascular then filed this Appeal.

## SUMMARY OF ARGUMENT

Basing its decision on substantial evidence, the Board correctly interpreted the "circumferential ridges" to be broadly construed as a "raised strip" disposed circumferentially about the surface of the inflatable cuff (A175-176, Decision to Institute and A5-6, Final Written Decision) and that the inflatable protrusions are themselves inflatable. (A7-8, Final Written Decision) The Board correctly decided that TriVascular did not show that the combination of Samuels '851 and Todd '745 satisfies the requirement of independent claims 1, 14, and 23 for "inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff". (A18, Final Written Decision)

The Board did not require TriVascular to explain how Todd '745 could be bodily incorporated into Samuels '851 and nowhere does such language exist in the Final Written Decision. The Board's claim construction correctly precluded the Trial from proceeding on Ground 1 (A189-A190). TriVascular's arguments regarding the "inflatable protrusions" disclosed in Samuels '851 are an attempt to raise an issue in the Appeal, which is not appealable. The Board was diligent and careful in considering the state of the prior art and had the right to limit its inquiry to two grounds of unpatentability and to exclude consideration other grounds of unpatentability set forth in the Petition for *inter partes* review (A193).

TriVascular's attempt to add a new ground of unpatentability, a so called "second theory", that was not present in the petition and not instituted for Trial, was waived when TriVascular failed to include the second theory in the Petition and failed to request a rehearing of the Decision to Institute. While not particularly relevant, TriVascular's newly presented ground of unpatentability fails to meet the limitation of "inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff". The Board's decision is supported by substantial evidence and should be affirmed and TriVascular's Appeal should be dismissed.

20

# ARGUMENT

## I.    Standard of Review

Whether a claimed invention is unpatentable as obvious under § 103 is a question of law based on underlying findings of fact. *See In re Dembiczak,* 175 F.3d 994, 998 (Fed. Cir.1999) (citing *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, (1966)).  This Court has decided that since a Board's decision "is confined to the factual record compiled by the Board, this Court uses the 'substantial evidence' test to conduct a 'review of Board factfindings' such that factual findings by the USPTO are upheld when supported by substantial evidence. *See* 5 U.S.C. § 706(2)(E)". *In re Gartside*, 203 F.3d 1305, 1315 (Fed Cir. 2000).  "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)" *See In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002). The review of factual findings for substantial evidence examines the record as a whole, taking into account evidence that supports the Board's position as well as that evidence detracting from the Board's conclusion. *In re Gartside*, 203 F.3d 1305, 1312, (Fed. Cir. 2000).  The Board's decision will not be found to be "unsupported by substantial evidence simply because the

Board chose one conclusion over another plausible alternative." *In re Jolley*,

308 F.3d 1317, 1329 (Fed. Cir. 2002).

**II.    The Board correctly required that the "circumferential ridges" be broadly construed as a "raised strip" disposed circumferentially about the surface of the inflatable cuff.**

The Board correctly interpreted the "circumferential ridges" to be

broadly construed as a "raised strip" disposed circumferentially about the

surface of the inflatable cuff.  As stated in *Microsoft Corporation v.

Proxyconn, Inc*. Slip at 7 (Fed Cir June 16, 2015)

> "claims should always be read in light of the specification and teachings in the underlying patent." *Suitco*, 603 F.3d at 1260. The PTO should also consult the patent's prosecution history in proceedings in which the patent has been brought back to the agency for a second review. *See Tempo Lighting Inc. v. Tivoli LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014). Even under the broadest reasonable interpretation, the Board's construction "cannot be divorced from the specification and the record evidence," *In re NTP, Inc*., 654 F.3d 1279, 1288 (Fed. Cir. 2011), and "must be consistent with the one that those skilled in the art would reach," *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir. 1999). A construction that is "unreasonably broad" and which does not "reasonably reflect the plain language and disclosure" will not pass muster. *Suitco*, 603 F.3d at 1260."

The Board followed the correct claim construction guidelines while the

Board considered the proposed constructions of TriVascular and Samuels

and disagreed with them both.  (See pages 8 and 9 of the Decision to

Institute, A175-176) The Board then read the claim limitation in light of the patent specification noting that the '575 patent describes a "circumferential ridge" as a ridge, i.e. a raised strip, "disposed about [the] circumference" of outer surface 23 of inflatable cuff 17.  The Board also considered a definition from "WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY" and found the description in the specification to be in accord with the ordinary and customary meaning of the word "ridge" being a raised strip (A176).  As such the Board was basing its decision on substantial evidence.  See *In re Gartside, supra.*  The Board correctly maintained this interpretation in the Final Written Decision (A5-A6). Furthermore, when TriVascular contended that the Board misunderstood its argument that the term "circumferential ridge" includes both 'continuous' and 'discontinuous' circumferential ridges, the Board correctly explained that TriVascular's argument is not persuasive because "it does not inform the meaning of the term 'circumferential ridge'" (A30).  Furthermore, as noted by the Board, "the only construction that TriVascular proposed for the term 'circumferential ridge' is 'an elevated part of the outer surface'" (A30). The Board also noted that TriVascular's focus on amendment "B" was misplaced since the positions of the Examiner and the Applicant had

changed after amendment "B" was not entered and another amendment was entered (A30).

TriVascular now argues that the Board's construction is too narrow because it does not cover a ridge, such as the Blue Ridge Mountains, which TriVascular characterizes as a discontinuous series of granite protrusions. TriVascular cites *Microsoft Corp. v. Proxyconn*, Inc slip at 6-7 (Fed. Cir. June 16, 2015) for the proposition that the Board's construction is too narrow.  (Br. 31, 32) Ironically, *Microsoft Corp. v. Proxyconn*, Inc slip at 6-7 (Fed. Cir. June 16, 2015) stands for the proposition that the broadest reasonable interpretation of a claim must still be made in light of the specification and prosecution history which would tend to **limit** the scope of the claims, **not broaden them**.

## A.  The issued claims are not affected by Estoppel.

The argument regarding prosecution history is also mistaken. TriVascular is essentially arguing that the claims should be construed to read on the one piece of art initially relied upon by the Examiner in rejecting broader claims of the application resulting in Samuels '851.  According to TriVascular, since Samuels argued that the claims could be amended to add the word "continuous" before circumferential ridge to overcome Samuels '851, Samuels cannot now argue that the claims do not cover a

24

discontinuous ridge.  Similarly, Trivascular also references the phrase "without rigid components" which Samuels specifically suggested adding during the application prosecution in an attempt to distinguish over the barbs of Samuels '851. (See Br. 12)  According to TriVascular "the issued claims encompass circumferential ridges that are discontinuous, and that include a rigid component".  In other words, TriVascular has seemingly now reached the conclusion that the claims read on protrusions and barbs of Samuels '851.  TriVascular then comes to the contrary conclusion, perhaps after remembering that Ground 1's reliance on Samuels '851 as an anticipatory reference was denied, that the claims read on the protrusions but Todd '745 is still needed to teach including a rigid component.  Regardless, the idea that Samuels is required by Prosecution History Estoppel to have claims broad enough to read on the one piece of art used by the Examiner to reject his claims is simply unreasonable and should not be entertained by the Court.

**B. The Board did not err in dismissing TriVascular's arguments regarding the prosecution history.**

TriVascular argues that the Examiner never withdrew the rejection based on Samuels '851 and Samuels never retracted his amendment of claim 4, and therefore estoppel applies (Br. 36).  These statements are flat wrong

since the rejection was withdrawn when the Examiner allowed the case and the amendment to claim 4 was not entered (A708-A730). The Board was correct to address TriVascular's argument by noting that "TriVascular's arguments focus on the patent applicant's "Amendment B" in isolation (*see* Req. Reh'g 7 (citing Ex. 1012, 84–85)), and are unpersuasive in view of the subsequent prosecution history which shows that the positions of the Examiner and the patent applicant changed following a telephone interview between Applicant and Examiner referenced in "Amendment C." *See* Ex. 1012, 94–96, 98. Ultimately, an Examiner's Amendment was entered deleting claim 26 and substituting a new claim (which issued as patent claim 23)" (A30).

## C. The Board Correctly Construed the claims to require "raised strips"

TriVascular's basic argument appears to be that, under its first theory, inflatable protrusions could be added to Samuels '851 as argued in the Petition (A77) and its Reply (348-361). Under a second theory, Ground 6 now also stands for the proposition that it would be obvious to remove the barbs from Samuels '851 and that Samuels '851 already has protrusions as argued in Petitioner's Reply (A356-361) and at oral argument (A434-440). In other words, under one theory, Samuels '851 lacks the claimed inflatable

protrusions and should be modified to add inflatable protrusions from Todd

'745 and under a new, second theory, only the barbs are removed and

replaced with the protrusions of Todd.  Any argument by TriVascular that

the first theory was not the only theory or that TriVascular wanted to present

a "second theory of unpatentability" was waived when TriVascular failed to

present the "second theory" in the Petition (A51-A116) and failed to file a

request for reconsideration after the Decision to Institute.

### First Theory

Ground 6, as adopted by the Board in the Decision to Institute, was

the First theory, i.e. "Petitioner relies on Samuels '851 for all the limitations

of claim 1 except the friction-enhancing outer surface, and relied upon the

'inflatable balloon protuberances' of Todd '745 for this feature" (A181).

The Board went on to state "We understand Petitioner to contend that it

would have been obvious to a person of ordinary skill in the art to substitute

Todd's protuberances (such as outwardly projecting annular rings 52 of

Figure 8) for the barbs of Samuels '851" (A182).  Regardless the Board

addressed TriVascular's first theory and claim construction regarding

inflatable protrusion stating:

> TriVascular argues that "inflatable protrusions can be 'solid'
> structures such as barbs or[,] in the case of [] some of the prior
> art examples, solid circumferential ridges." Reply 10 (citing

> Clark. Dep., Ex. 1021, 135:6–16 (discussing Samuels '851 (Ex.
> 1002))). TriVascular's proposed claim construction, however,
> does not accord with the plain meaning of "inflatable" as used
> in the Specification, i.e., expandable by being filled with fluid.
> *See, e.g.*, Ex. 1001, Abstr. 3–4, 3:55 ("inflatable chamber"),
> 1:30 ("inflatable balloon"), 2:33, 38, 3:30 ("inflatable cuff"),
> 3:33–34 ("inflatableridges"). Under the plain meaning of
> "inflatable" as used in the Specification, solid ridges are not
> "inflatable," because they are not capable of being filled with
> fluid. *See* Resp. 5–8; *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir.
> 1989) (holding that the words of the claim must be given their
> plain meaning unless the plain meaning is inconsistent with the
> specification). (see A7-8)

The Board goes on to note that, under TriVascular's proposed construction, there is no difference between "protrusions" and "inflatable protrusions" such that TriVascular is purporting to ignore the word "inflatable".

### Second theory

Samuels respectfully submits that TriVascular is trying to appeal a ground of rejection not even presented in the Petition but rather first presented in the Reply. Now, for the first time in this proceeding, Samuels has a chance to address TriVascular's new "second theory". Samuels responds as follows: First and foremost, while Samuels had no chance to address this theory, the Board did consider and reject all of TriVascular's arguments both in the Final Written Decision and in the Decision on Rehearing. With respect to claim construction, the Board explained:

In the Institution Decision, we considered TriVascular's proposed claim construction that a "circumferential ridge disposed about the inflatable cuff" is "an elevated part of the outer surface disposed about the inflatable cuff." Inst. Dec. 8–9 (citing Pet. 10). We did not adopt TriVascular's proposal because it was inconsistent with the Specification's description of "circumferential ridges 25" as raised strips disposed about the circumference of outer surface 23 of inflatable cuff 17. *Id.* at 9 (citing Ex. 1001, 3:32–33, 54, Figs. 1 & 2). We determined that the description of a "ridge" as a raised strip "accords with the ordinary and customary meaning of the word 'ridge' as 'a raised strip (as of plowed ground).'" *Id.* (citing Ex. 1014 (WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986)), 1014). For those reasons, we interpreted a "circumferential ridge disposed about the inflatable cuff" to mean a "raised strip disposed circumferentially about the outer surface of the inflatable cuff. (See A28-29)

Essentially, the Petitioner argues that the barbs in Samuels '851 (A512-516) would be removable in view of Todd '745. However, TriVascular has not shown that Samuels '851 discloses or suggests "at least one circumferential ridge disposed about the inflatable cuff," as construed above, because the recesses 12 do not form a raised strip. At best, the Claims Chart in the Petition states "cuff 10 which includes a plurality of reinforced recesses 12 radially arrayed around its outer surface 14" as set forth in column 2, lines 40-42 (A514), (A83). Regardless, each recess takes a circular shape. Recesses 12 are arrayed longitudinally, in sets of 3, and radially as shown in Figure 2 of Samuels '851 (A511). None of recesses 12 extends as a circumferential ridge even if the ridge were to be re-characterized as

29

elevated and discontinuous.  At best each barb 18 could be considered a point, not a ridge or parts of a ridge, and the recesses simply do not extend as a circumferential ridge.  The claimed "at least one circumferential ridge disposed about the inflatable cuff" is simply not present and the claim limitations have not been met.

Furthermore, as mentioned in on page 6 of Samuels' Preliminary Response to Ground 1 (A139) removing the barbs in Samuels '851 would destroy the objective of the reference.  The Samuels '851 reference actually focuses on using barbs.  Note, for example, the discussion in column 1, lines 48-55, column 2, lines 5-6 and 60-64, column 3, lines 51-56 and claim 1(d) (A514, 515).  Indeed, the discussion in Samuels '851 stresses how important barbs were considered in order to avoid the catastrophic results of migration of the device to an undesired location (A514).  According to Samuels '851, the utilization of an inflatable balloon cuff provided with a plurality of small pockets or recesses arrayed on its outer surface in which a plurality of wall engagement barbs are secured satisfies the desire to provide an apparatus for replacement of an endoluminal medical device.  The Petitioner's suggested modification goes totally against the basic teaching of Samuels '851 and is thus not an obvious step to take.  With respect to Todd '745 (A575-593) Todd '745 is directed to a balloon catheter which is temporarily placed in a

body passageway to add fluid to a portion of a human body or to drain fluid out of a human body (A586). The balloon catheter is removed after the procedure. There would be no reason for one of ordinary skill in the art working with permanently placed endoluminal devices of Samuels '851 to look to the teachings of Todd '745 in removing the mandated barbs.

## III. TriVascular's statement that the Board erred in determining that the skilled artisan would not have combined the teachings of Samuels '851 and Todd is incorrect.

In essence, the Petitioner argues that the Board erred in not combining the teachings of Samuels '851 and Todd '745 and that replacing **just** the barbs in Samuels '851 would be obvious in view of Todd '745 and other art. To the contrary, as further discussed below, the Board did combine these two references and found that the combination still did not meet the claim limitations. Furthermore, as discussed above, removing the barbs in Samuels '851 would destroy the objective of the reference. Also, there is no portion of the record supporting TriVascular's contention that the Board required TriVascular to set forth a detailed schematic or require that the Board required how the teachings of Samuels and Todd '745 could be combined, to the contrary the Board did combine the teachings.

**A. The Board did combine Samuels '851 and Todd '745 and correctly decided that TriVascular did not show that the combination of Samuels '851 and Todd '745 satisfies the requirement of independent claims 1, 14, and 23 for "inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff".**

TriVascular tries to argue that the Board failed to combine Samuels '851 and Todd '745, but the Board did combine the teachings from these two references, so TriVascular's argument is not correct. (See A18) "We determine that TriVascular has not shown that **the combination of Samuels '851 and Todd** satisfies the requirement of independent claims 1, 14, and 23" (emphasis added). TriVascular then argues that Samuels '851 teaches all the elements of the challenged claims except that Samuels '851 uses barbs to prevent the cuff from moving. This is simply wrong, particularly since the Board held that a ridge is a "raised strip" (A5-6). TriVascular then argues that the Board initially agreed with the idea that it would have been obvious to replace the barbs of Samuels '851 with Todd's protuberances. Once again TriVascular misstates the Board's position in the Decision. TriVascular reads the Board's Decision to mean that a gripping protuberance would be used in place of each barb. More accurately, the Board stated:

32

> "We do not agree with Patent Owner's contention that
> Petitioner has failed to explain how the combination of Samuels
> '851 and Todd would have inflatable circumferential ridges.
> *See id.* at 12. As discussed above, Petitioner relies, for
> example, on Todd's Figure 8, which depicts protuberances in
> the form of outwardly projecting annular rings 52 wound about
> the exterior of balloon 26". (See A183)

Clearly the Board is not requiring bodily incorporation of rings 52 to replace

just barbs 18 but rather is agreeing with Petitioner that rings 52 could replace

the array of barbs 18 each having a recess with rings 52. It was only when

TriVascular pushed its second theory in oral argument that the *just* barbs 18

should be replaced with the protuberances that the Board asked for

clarification (A440). Despite TriVascular's protests to the contrary, it is

TriVascular that is improperly requiring bodily incorporation of a second

reference by insisting that only barbs 18 be replaced with protuberances,

while the Board took a more reasonable view as discussed above.

    The Board confirmed this analysis in the Final Written Decision

stating:

> "In its Petition, TriVascular contends that recessed 12 of
> Samuels '851 satisfy the requirement of independent claims 1,
> 14, and 23 for 'inflatable protrusion(s) including at least one
> circumferential ridge disposed about the inflatable cuff.'…
> TriVascular has not explained sufficiently, however, why a
> person of ordinary skill in the art would have known to include
> the recesses of Samuels '851 in the proposed combination of
> Samuels '851 and Todd." (A18)

33

The Board goes on to explain how the recesses 12 of Samuels '851 work in combination with the barbs 18 noting that **TriVascular asserted in its Reply that "the 'inflatable protrusions and barbs' of Samuels '851 serve the same purpose as the 'ridges' of Todd**, but proposes, without elaboration, to substitute just the barbs of Samuels with ridges of Todd." (A18-19, emphasis added)

### B. The Board did not find that the references teach away and the Board is free to reach a different conclusion at Trial from the one it reached when instituting the Trial.

TriVascular now suggests that the Board declined to find teaching away, or even that the combination, of Samuels '851 in view of Todd '745, could not be made without destroying the purpose of Samuels '851 in the Institution Decision and Final Decision. TriVascular also alleges that the Board did not explain why its previously articulated reason no longer applied (Br. 48) and then suggests that "As such, the Board's final determination to reject the combination is unsupported by evidence." (Br. 48) This statement is contrary to the Board's analysis based on the combination of references. In other words, the Board did agree with TriVascular that the references should be combined but found that the combination did not meet the claim limitations (A18). TriVascular then

goes on to complain that "Once TriVascular made out a *prima facie* case of obvious, the Board should have sustained its findings …" (Br. 48). TriVascular never made out a *prima facie* case and does not cite any portion of the record where that was done.  The burden of proof in an *inter partes* review is on the petitioner to make its case during trial.  It would appear that TriVascular has confused the decision to institute an inter partes review with the concept of burden shifting once a *prima facia* case has been made and therefore TriVascular's argument has no merit.

TriVascular goes on to argue that since the Board initially agreed with TriVascular in the institution decision on this issue, it cannot reach a different conclusion in its Final Written Decision.  While the Board did find that Samuels did not initially establish that removing the barbs in Samuels would destroy the objective of the reference or go against its basic teaching, Samuels did present evidence to that effect during trial.  Regardless, the Board did not change its mind on this issue and found against TriVascular on other grounds (A18).

### C. TriVascular confuses the concept of bodily incorporation and ignored the state of the art and the Board correctly focused its analysis.

TriVascular again argues that the Board improperly required that TriVascular prove that the features of the secondary reference be bodily incorporated into the base reference. No such analysis occurred. As stated above, the Board confirmed this analysis in the Final Written Decision stating:

> "In its Petition, TriVascular contends that recessed 12 of Samuels '851 satisfy the requirement of independent claims 1, 14, and 23 for 'inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff.'… TriVascular has not explained sufficiently, however, why a person of ordinary skill in the art would have known to include the recesses of Samuels '851 in the proposed combination of Samuels '851 and Todd." (A18)

The Board goes on to explain how the recesses 12 of Samuels '851 work in combination with the barbs 18 noting that **TriVascular asserted in its Reply that "the 'inflatable protrusions and barbs' of Samuels '851 serve the same purpose as the 'ridges' of Todd**, but proposes, without elaboration, to substitute just the barbs of Samuels with ridges of Todd." (A18-19, emphasis added).

TriVascular then undermines its whole argument on Appeal when it quotes counsel for TriVascular stating "[T]he simplest way of looking at it

and what was done is instead of incorporating the recesses and inflatable recesses that become inflatable protrusions, one would substitute around, circumferentially around the cuff, the inflatable cuff, a circumferential ridge, similar to the one that is in Todd." (Br. 52, A445)  Here counsel for TriVascular argues on the record, and in agreement with the argument set forth in TriVascular's reply, that the inflatable recesses of Samuels '851 should be replaced with the circumferential ridges of Todd '745.  Contrary to TriVascular's argument in its appeal brief, the Board seemingly agreed that this combination could be made but found that the combination did not meet the claims.  TriVascular's argument (Br. 53, 54) that the Board somehow should have ignored TriVascular's own argument in the *inter partes* review (in the reply and during oral argument) and adopted TriVascular's second theory of replacing just the barbs of Samuels based on Lane, Holman and Lazarus is simply not correct.

The Board was diligent and careful in considering the state of the prior art and had the right to limit its inquiry to two grounds of unpatentability and to exclude consideration other grounds of unpatentability set forth in the Petition for *inter partes* review.  The Board only instituted trial on grounds 6 and 7; therefore, this Court has no jurisdiction to hear any argument regarding the other grounds.  See 35 U.S.C.  § 319 as discussed in

*St. Jude Medical, Cardiology Division, Inc. v. Volcano Corporation*, 749 F.3d 1373, 1375 (Fed. Cir. 2014). Specifically, this Court does not have jurisdiction to review the Board's denial to institute trial on Ground 1: §102(b) and/or §103(a) Samuels '851 [Claims 1-2, 6-15, 18-24] nor review patentability based on additional combinations of Lazarus '088, Rogers '024, or Holman '537 that were not the basis of trial during the *inter partes* review.

The scope of appellate review is further narrowed because Appellant's Brief only discusses Ground 6 and more specifically unpatentability based only on Samuels '851 in view of Todd '745. Under 37 C.F.R. § 42.108(c), an *inter partes* review will only be "instituted for a ground of unpatentability" where the Board decides that **the evidence put forward in a petition demonstrates** that there is "a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable." 37 C.F.R. § 42.108(c). However, while the Decision to institute trial does mention claims 1-2, 6-15, and 18-24, the Petition lacks any mention of how Todd '745 meets any limitations of claims 23 and 24 as shown on pages 56-60 in claim charts 2 and 3 of the Petition. Therefore, this Court's Jurisdiction is limited to reviewing the Board's decision finding that claims 1-2, 6-15 and 18-22 were patentable over Samuels '851 in view of Todd '745.

TriVascular is trying to resurrect grounds of unpatentability based on Rogers '024, Lazarus '088 and Holman '537 that were considered and rejected at the outset. See grounds 1, 3, 4, and 5, all of which were grounds that were not instituted in the *inter partes* review. (A71-76 Petition) For example, in Ground 1 on page 17 of the Petition, TriVascular argued that at high levels of inflation, by removing the barbs (18) from Samuels '851, Samuels '851 meets the claims. In Ground 3, on page 20 of the Petition, TriVascular argued that one would look at Rogers '024 and remove the barbs from Samuels '851. In Ground 4, on pages 20-21 of the Petition, TriVascular argued one need only look at Lazarus '088 for a clear understanding that barbs can and should be eliminated. In Ground 5, TriVascular argued that a "POSA would either look to Rhodes '117 for a clear understanding about leaving out the barbs in Samuels '851 or modifying Samuels '851 [so] that its barbs do not penetrate". All of Grounds 1, 3, 4 and 5 assume Samuels '851 discloses a ridge and the Board rejected them all such that none of these grounds was made part of the *inter partes* review.

# CONCLUSION

The Board correctly determined that TriVascular has not shown that the combination of Samuels '851 and Todd satisfies the requirement of independent claims 1, 14, and 23 for "inflatable protrusion(s) including at least one circumferential ridge disposed about the inflatable cuff."  The Board correctly explained that the references do not show protrusions that were themselves inflatable as required by the claims.  All of TriVascular's allege errors are incorrect for the reasons set forth above.  Substantial evidence supports the Board's findings.  Accordingly, the Court should affirm the decision of the Board and TriVascular's Appeal should be dismissed.


Respectfully submitted,                    Dated:  August 20, 2015


/s/ James D. Petruzzi
James D. Petruzzi
Registration No. 35,644
The Petruzzi Law Firm
4900 Woodway Drive, Suite 745
Houston, TX  77056

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
*TriVascular, Inc. v. Samuels,* 2015-1631

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by JAMES D. PETRUZZI, counsel for Appellee to print this document.  I am an employee of Counsel Press.

On **August 20, 2015** counsel has authorized me to electronically file the foregoing **BRIEF OF THE APPELLEE SHAUN L. W. SAMUELS** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

David K.S. Cornwell
Richard D. Coller, III
Pauline Pelleiter
Sterne Kessler Goldstein & Fox, PLLC
1100 New York Avenue, N.W.
Washington, DC 20005
202-772-8580
davidc@skgf.com
rcoller@skgf.com
ppelletier@skgf.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

August 20, 2015                    /s/ John C. Kruesi, Jr.
                                   Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains <u>8,202</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2013 </u>in a <u>14</u> point <u>Times New Roman </u>font or

_____ The brief has been prepared in a monospaced typeface using <u>MS Word 2002 </u>in a ___ characters per inch_____ font.


Dated:  August 20, 2015                    <u>/s/ James D. Petruzzi          </u>
                                           James D. Petruzzi
                                           Counsel for Appellee